IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAREL A. STEPNEY, #430226      *
Plaintiff
    v.      *      Civil Action No. ELH-17-909

WARDEN ARMSTEAD      *
LIEUTENANT PEOPLES
CO II DANIEL NGANGA      *
CO II BONSWORTH
NURSE ALATOSO      *
DR. SHABAZZ
L.C.P.C. M.H. PROFESSIONAL KRISTEN      *
  HANKS
Defendants      *
        *****

## MEMORANDUM OPINION

Jarel Stepney, who is self-represented, is a state inmate confined at the Patuxent Institution ("Patuxent") in Jessup, Maryland. On April 4, 2017, he filed an unverified complaint under 42 U.S.C. § 1983, invoking the court's jurisdiction and supplemental jurisdiction under 28 U.S.C. §§ 1343 & 1367. ECF 1. Stepney alleges use of excessive force and inadequate medical care. *Id.* at 4.

Defendants CO II Daniel Nganga and Warden Laura Armstead ("Correctional Defendants") have jointly filed a motion to dismiss or, in the alternative, for summary judgment. ECF 14.[1] ECF 14. The motion is supported by a Memorandum (ECF 14-1) (collectively, the

---

[1] Service of process was not accepted or effectuated on the following defendants: Lt. Peoples; CO II Bonsworth; Nurse Alatoso; Dr. Shabazz; and Kristen Hanks. Therefore, the Court has not addressed plaintiff claims as to them.

"Motion") and exhibits in the form of declarations and records. ECF 14-2 to 14-4.[2] Stepney has not responded.[3]

No hearing is necessary to resolve this Motion. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, defendants' uncontroverted motion, construed as a motion for summary judgment, shall be granted.

## I. BACKGROUND

**A. Stepney's Complaint**

Stepney alleges that on or about October 7, 2015, he arrived at Patuxent and was placed in cell C-1-16. ECF 1, ¶¶ 13, 14. Correctional Officer Nganga, in the presence of Correctional Officer Bonsworth and Lt. Peoples, instructed Stepney to remove all his clothing, but he refused. *Id.* ¶¶ 14, 15. Lt. Peoples called for a "Correctional Institution Squad" and at that time Bonsworth, Nganga, and Peoples rushed the cell door and attempted to get into the cell, but were unable to do so "because of the way [Stepney] held the door." *Id.* ¶ 15. Stepney asserts that when the officers finally entered his cell some thirty minutes later, the first to do so, Peoples, started swinging and punching Stepney in his chest. *Id.* ¶ 16. Stepney claims that Bonsworth, who next entered the cell, punched him, then picked him up, carried him outside the cell, threw him on the floor of the tier, and placed his knees in Stepney's back. Further, Stepney alleges that Nganga punched him in the back of the head and on the sides of his face several times. ECF 1, ¶¶ 16-17.

---

[2] All references to docket entries reflect their electronic pagination.

[3] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), on August 2, 2017, the Clerk of Court informed Stepney that defendants had filed a dispositive motion; that he had seventeen days in which to file written oppositions to the motion; and that if Stepney failed to respond, the claim against defendants could be dismissed without further notice. ECF 15. Stepney has not filed an opposition.

Stepney next claims that Nganga handcuffed him in the back and all three correctional officers dragged him to his feet and carried him to the shower area, where his clothing (a jumpsuit, tee-shirt, and underwear) was cut off with scissors. *Id.* ¶¶ 17, 18. He states that he was given a smock and taken back to his cell, where he was given a food tray. Stepney complains that his request to be taken to the medical department was ignored by all the officers. *Id*. ¶ 19. Further, he alleges that his body was becoming numb and he experienced bleeding from his rectum and swelling on both sides of his face and his right foot. *Id*. ¶ 20.

Stepney asserts that after laying in his cell for about two hours, Nurse Alatoso came to his cell and attempted to make him take the medication "dethpacolt."[4] He claims that he took the medication because Alatoso told him he would remain in Housing Unit L-1 if he did not do so. ECF 1, ¶ 21.

Stepney states that because he was left with "only a smock, no foot wear, no bedding, a concrete bed, mice, roaches, etc., he wanted to get away from such an environment." ECF 1 ¶ 22. He recounts that the following morning, on October 8, 2015, he was seen by Dr. Shabazz, who placed Stepney on Lithium, which "made him bleed from the rectum." *Id.* ¶ 23. He informed Shabazz of same, but the physician informed him that Lithium did not cause that reaction. *Id*. Additionally, Stepney claims that Kristen Hanks, a Mental Health Professional ("MHP"), prescribed the wrong medication for him on October 8, 2015, causing him to be poisoned. ECF 1, ¶ 24. He contends that two to three weeks later, his blood work "came back poison." *Id*. ¶ 24. Stepney states that Dr. Hong took him off Lithium after his "blood became

---

[4] Presumably, Stepney is referring to the medication Depakote, which is used to treat various types of seizure disorders, as well as manic episodes related to bipolar disorder, and to prevent migraine headaches. *See* https://www.drugs.com/depakote.html.

poison." *Id*. ¶ 25. He complains that nothing was done for him by Patuxent medical staff as to the aforementioned "attack" by correctional officers or the poisoning. *Id*. ¶ 26.

Stepney alleges that Warden Armstead failed to take any action in response to his administrative remedy procedure ("ARP") grievances (*id.* ¶ 26), and failed "to curb" what happened to him. *Id.* ¶ 34. He complains that the correctional officers' actions were a "misuse of force" as he did nothing to warrant such treatment and they ignored his request to be taken to the medical department. *Id*. ¶¶ 27, 28, 29, 30. Stepney also claims that Alatoso, Hanks, and Shabazz engaged in unprofessional behavior, negligence, and cruel and unusual punishment when Alatoso forced him to take medication, Hanks prescribed the wrong medication, and Shabazz prescribed Lithium, which caused blood poisoning. *Id*. ¶¶ 31, 32, 33. He seeks declaratory relief as well as compensatory and punitive damages. ECF 1 at 16-19.

**B.     Correctional Defendants' response**

Stepney was transferred from the Maryland Correctional Institution in Jessup ("MCIJ") to the Mental Health Unit at Patuxent at approximately 4:00 p.m. on October 6, 2015, due to his disorganized thoughts and inability to get along with others at MCIJ. ECF 14-2 (Intelligence and Investigative Division ("IID") Report) at 6, 28. He was housed in a Tier L-1 cell. *Id*. at 6.

According to the IID Report, plaintiff filed an ARP grievance on November 7, 2016, claiming to have been assaulted in his cell by seven officers on the evening of his arrival at Patuxent. *Id*. at 5. The incident was investigated by IID Detective Roger Balderson.

Stepney was interviewed by Balderson on December 17, 2015. During the interview, Stepney indicated that he had not been injured at all, despite his ARP alleging that he had been punched and kneed in his sides by officers. ECF 14-2 at 6. He was unable to identify any of the correctional officers who allegedly assaulted him, either by name or physical description.

4

Stepney agreed to complete a Complaint Withdrawal form to dismiss the complaint, which he did at the conclusion of the interview. *Id.* at 10. For his part, Correctional Officer Nganga affirms he did not use force against Stepney. ECF 14-4 (Nganga Decl.).

Balderson continued his investigation by meeting with the Patuxent Shift Supervisor, Major Eugene Pigatt. ECF 14-2 at 6. A computer records check was conducted for Use of Force ("UOF") reports for October 7, 2015, with negative results. Pigatt informed Balderson that if an inmate had to be extracted from his cell, as Stepney alleged in his ARP, a UOF report would be generated. Balderson also reviewed the Patuxent Significant Events Form for October 7, 2015, as well as the L-1 Tier Logbook for October 6 to 8, 2015. The examination revealed no information related to Stepney or any cell extraction or incident of assault involving Stepney. ECF 14-2 at 12-15, 17-20, 22-26; ECF 14-3 (Johnson Decl.). Pigatt informed Balderson that it is normal procedure during intake for a mental health inmate to be relieved of his possessions, including clothing, and to be placed in a smock. ECF 14-2 at 6. Major Pigatt also indicated that mental health inmates are interviewed by medical staff and had there been any struggle it should have been noted in Stepney's medical records. *Id.* at 6-7.

Balderson also interviewed MHP Michael Crowley on December 17, 2015. *Id.* at 7. Crowley indicated that Stepney had been diagnosed as polar-depressive, with severe psychotic features. *Id.* Crowley told Balderson that Stepney was not properly medicated upon his arrival at Patuxent and was observed showing disorganized and bizarre behaviors. Crowley stated that, based upon Stepney's condition when he arrived at Patuxent, he could have imagined or fabricated an assault. *Id.* Crowley stated he had been treating Stepney since October 26, 2015, and offered to speak with Stepney to determine if the incident on October 6, 2015, had been fabricated or imagined. ECF 14-2 at 7.

5

Thereafter, Crowley and Balderson went to Stepney's cell and, during the course of the discussion, Stepney twice indicated that he had "fabricated" an assault story because he wanted to speak with a case manager. He explained that he "knew that if an outside agency got involved he could let them know he had not been able to speak to a case manager." *Id.*

On October 7, 2015, Stepney was seen for his initial psychiatric evaluation at Patuxent by Muhammad Abbas, M.D. *Id*. at 31-32. It was observed that Stepney had a prior history of mental illness dating back to 2007, when he was 18 years old. The entries note that Stepney had been prescribed Depakote prior to his arrest but had indicated that he had seen a television commercial that convinced him to stop taking the medication. *Id.* at 31.

The medical records simultaneously entered the first week of October 2015, show no complaints from Stepney regarding an assault. The medical entry from October 6, 2015, states that Stepney exhibited no signs of abuse, he was not cooperative, and custody staff spent some time persuading him to change into his smock and "strong sheet." *Id*. at 30.

## II. STANDARD OF REVIEW

**1. Motion for Summary Judgment**

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cty*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary

judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 Fed Appx. 220, 222 (4th Cir. 2016) (per curiam). But, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165, 167.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 Fed. App'x 632, 638 (4th Cir. 2016); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain*

*Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f))

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional

8

discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 Fed. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 Fed. App'x at 638.

Plaintiff has not responded to the Motion. Nor is there any indication that any additional materials would create a genuine issue of material fact. I am satisfied that it is appropriate to address the defendants' motion as one for summary judgment, as this will facilitate resolution of the case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Id.*; *see Sharif v. United Airlines, Inc.*, 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

Notably, "[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

Moreover, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC,* 828 F.3d 208, 216 (4th Cir. 2016). Thus, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

Plaintiff did not respond to the Motion. But, because plaintiff is self-represented, his complaint is liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

In sum, to avoid summary judgment, there must be a genuine dispute as to material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). In *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017), the Court said: "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law."

### III. DISCUSSION

**A. Supervisory Liability**

As to Stepney's claim against Warden Armstead, it is well established that the doctrine of *respondeat superior* does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no *respondeat superior* liability under § 1983). Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

To state a claim for supervisory liability under § 1983, the plaintiff must allege that: (1)

the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Where, as here, Stepney points to no action or inaction on the part of Warden Armstead that resulted in a constitutional injury, the claims against Warden Armstead must be dismissed. Decisions by correctional staff considering inmate complaints, without more, do not establish personal participation in the alleged constitutional violation. *See Atkins v. Maryland Div. of Correction*, 2015 WL 5124103 at *6 (D. Md. 2015) (act of denying grievances); *Scott v. Padula*, 2010 WL 2640308, *3 (D. S.C. 2010) (failure to investigate or process a grievance); *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("[A] denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983"). As such, Stepney's claims against Armstead are subject to dismissal.

**B. Excessive Force**

A convicted inmate's claim of use of excessive physical force is examined in the context of the Eighth Amendment's prohibition against cruel and unusual punishment. *See Whitley v. Albers*, 475 U.S. 312, 391-21 (1986); *see also Wilkins v. Gaddy*, 559 U.S. 34 (2010) (per curiam); *Hudson v. McMillan*, 503 U.S. 1, 7-9 (1992). "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners." *Farmer*, 511 U.S. at 832; *see also*

*Makdessi v. Fields,* 789 F.3d 126, 132 (4th Cir. 2015). The use of force by a prison official violates an inmate's Eighth Amendment rights when such force is "inconsistent with contemporary standards of decency," *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), or is "'repugnant to the consciousness of mankind.'" *Wilkins*, 559 U.S. 38 (citation omitted).

Recently, the Fourth Circuit observed that "not all Eighth Amendment violations are the same: some constitute 'deliberate indifference,' while others constitute 'excessive force.'" *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley*, 475 U.S. at 319-20). In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render medical assistance. *See Farmer*, 511 U.S. at 834; *Thompson*, 878 F.3d at 97. The deliberate indifference standard consists of a two-pronged test: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson*, 878 F.3d at 97-98 (quoting *Farmer*, 511 U.S. at 834, 837-38). Conversely, in excessive force cases, "courts must determine 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Thompson*, 878 F.3d at 98 (quoting *Hudson*, 503 U.S. at 6-7).

Where, as here, there is no opposition to defendants' declaration and records, Stepney has failed to present documentation, either by verified complaint or affidavits, evincing that he was attacked, as he claims by Correctional Officer Nganga or Correctional Officer Bonsworth. The uncontroverted evidence before the court shows that there was no documented use of force against Stepney by anyone, and no corresponding injury. The court concludes that no Eighth Amendment violation has been established.

### C. Supplemental Claims

Title 28 U.S.C. § 1367(a) states, in part, that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Supplemental jurisdiction, also called pendant jurisdiction, only includes "other claims" related to "claims *in the action*" that convey original jurisdiction. Under supplemental jurisdiction, the federal claim acts as a jurisdictional "crutch." David D. Siegel, Commentary on 1990 Revision, appended to 28 U.S.C. § 1367 (West 1993).

The complaint presents no federal claims to which any state law claim could attach to convey supplemental or pendant jurisdiction. In the absence of establishing a constitutional deprivation, Stepney does not show that this court can exercise supplemental jurisdiction over his claim of negligence, and the court declines to exercise its supplemental jurisdiction over any alleged tort claim.

### IV. CONCLUSION

For the foregoing reasons, the Motion of Armstead and Nganga shall be GRANTED. Judgment shall be ENTERED in favor of Armstead and Nganga.[5] A separate Order follows.

February 26, 2018                                         /s/
Date                                                            Ellen L. Hollander
                                                                 United States District Judge

---

[5] As indicated, service of process was not effectuated on defendants Alatoso, Dr. Shabazz, MHP Hanks, Peoples, and Bonsworth. Therefore, the complaint against them shall be dismissed, without prejudice.